UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM B.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 1:25-cv-00383-JMS-TAB |
| | ) |
| FRANK J. BISIGNANO, *Commissioner of Social Security Administration,* | ) |
| | ) |
| *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff William B. applied for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") from the Social Security Administration ("SSA") on November 24, 2021, with a disability onset date of April 1, 2020. [Filing No. 9-5 at 2-17.] His applications were denied initially on March 18, 2022, [Filing No. 9-4 at 8-26], and upon reconsideration on June 21, 2022, [Filing No. 9-4 at 35-49]. Administrative Law Judge Jeffrey Ciegel ("the ALJ") conducted a hearing on October 4, 2023, [Filing No. 9-2 at 46-70], before issuing a decision on December 12, 2023 in which he concluded that William B. was not entitled to benefits, [Filing No. 9-2 at 11-21]. The Appeals Council denied review on January 2, 2025. [Filing No. 9-2 at 2-4.] On February 26, 2025, William B. filed this civil action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. 1383(c), seeking a review of the denial of his benefits. [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
## STANDARD OF REVIEW

"The Social Security Administration provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (quoting 42 U.S.C. § 423(d)).

When an applicant appeals an adverse benefits decision, the Court "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citation omitted). Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "But even under this deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [the] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Hess*, 92 F.4th at 677 (citations omitted); 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). The ALJ must evaluate the following, in sequence:

(1) whether the claimant is currently [un]employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner];

(4) whether the claimant can perform [his] past work; and

(5) whether the claimant is capable of performing work in the national economy.

*Hess*, 92 F.4th at 677 (quoting *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001)). A claimant is disabled if he satisfies Steps One, Two, and Three. *Gedatus*, 994 F.3d at 898. If a claimant satisfies Steps One and Two, but not Step Three, the claimant must then satisfy Step Four to be found disabled. *See id.* "The burden of proof is on the plaintiff at steps one through four, but the burden shifts to the Commissioner at step five." *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). "[I]f the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then [he] need not progress to the next step." *Hess*, 92 F.4th at 677-78 (quotations and citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is an assessment of "the most an individual can work despite his or her limitations or restrictions." *Jarnutowski*, 48 F.4th at 773 (citation omitted). An ALJ must consider seven strength functions when assessing a claimant's RFC to work: "lifting, carrying, sitting, standing, walking, pushing, and pulling." *Id.* at 773-74 (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996)). An ALJ must also describe "how the evidence supports each conclusion [on strength functions], citing specific medical facts (e.g., laboratory findings)

3

and nonmedical evidence (e.g., daily activities, observations)." *Jarnutowski*, 48 F.4th at 773 (quoting SSR 96-8p, 61 Fed. Reg. at 34478). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe and may not dismiss a line of evidence contrary to the ruling." *Id.* at 774 (quotations and citation omitted). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id.* (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.920(a)(4)(iv), (v).

If the ALJ's decision "uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusions," the Court must affirm the denial of benefits. *Hess*, 92 F.4th at 677 (quotations and citation omitted); *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024). But if the ALJ's decision "is based on incorrect legal standards or unsupported by substantive evidence," the Court will remand for further consideration. *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023) (citations omitted).

## II.
### BACKGROUND

William B. was 57 years of age on his alleged onset date. [*See* Filing No. 9-5 at 2.] He has a GED and previously worked as a team lead driving a forklift and as an industrial truck operator, a machine container washer, and a material handler.[2] [Filing No. 9-2 at 19-20.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

4

The ALJ determined that William B. meets the insured status requirements of the Social Security Act through March 31, 2027. [Filing No. 9-2 at 13.] The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that William B. was not disabled. [Filing No. 9-2 at 11-21.] Specifically, the ALJ found as follows:

- At Step One, William B. had not engaged in substantial gainful activity[3] since April 1, 2020, the alleged onset date. [Filing No. 9-2 at 13.]

- At Step Two, William B. has the following severe impairments: Schizophrenia, major depressive disorder, and insomnia. [Filing No. 9-2 at 13-14.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 14-16.]

- After Step Three but before Step Four, William B. had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: he is capable of understanding, remembering, and carrying out simple instructions, and he can use judgment to make simple work-related decisions. He cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas, but end of day quotas are acceptable. He could deal with occasional changes in the routine work setting, and occasional interactions with coworkers and supervisors, but no interaction with the public. He would specifically need to avoid team-based activities, and he must avoid hazards such as unprotected heights and dangerous moving machinery (defined as machinery with moving mechanical parts)." [Filing No. 9-2 at 16-19.]

- At Step Four, William B. was unable to perform past relevant work as an industrial truck operator, a machine container washer, or a material handler. [Filing No. 9-2 at 19-20.]

- At Step Five, because William B. is of advanced age and has at least a high school education, "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

5

the claimant has transferable job skills." [Filing No. 9-2 at 20.] Considering William B.'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that William B. can perform, including cleaner, kitchen helper, and laundry worker. [Filing No. 9-2 at 20-21.]

### III.
#### DISCUSSION

William B. raises three issues, which the Court splits into four: (1) that the ALJ erred by limiting William B. to "occasional" interactions in the RFC, instead of "brief" interactions as the agency experts recommended; (2) that the ALJ erred by omitting the need for repetitive work from the RFC without explanation; (3) that the ALJ did not properly account for William B.'s moderate limitations in concentration, persistence, or pace; and (4) that the ALJ failed to conduct a legally sufficient symptom assessment. [Filing No. 17 at 6-15.] The Court addresses each issue in turn.

A.     **"Occasional" Interactions Limitation**

William B. argues that agency experts Drs. Hill and Larsen opined that he could respond to brief supervision and interactions with co-workers and that the ALJ found this evidence persuasive, but that he did not limit William B. to "brief" interactions with supervisors and co-workers and instead limited him to "occasional" interactions. [Filing No. 17 at 6.] He asserts that the ALJ did not explain why he imposed that limitation and that "[t]he terms occasional and brief are not interchangeable in an RFC finding," with a "brief" interactions limitation being more restrictive than an "occasional" interactions limitation. [Filing No. 17 at 6-7.]

In his response, the Commissioner argues that Seventh Circuit precedent supports the RFC's limitation to "occasional" interactions even in light of the state agency psychologists' findings that William B. should be limited to "brief" interactions. [Filing No. 19 at 6-7.] He asserts that William B. "fails to point to specific evidence showing that additional interaction limitations were warranted by the record," and that in any event, the RFC "contained the additional limitation

6

ensuring that [William B.] would not be required to perform team-based activities." [Filing No. 19 at 7.]

William B. argues in his reply that the Commissioner did not point to any explanation by the ALJ as to why he did not include the "brief" interactions limitation but instead included an "occasional" interactions limitation. [Filing No. 20 at 3.] William B. notes that the Seventh Circuit opinion the Commissioner relies upon involved a different issue – whether the ALJ had erred by not including a "superficial" interactions limitation when it was not supported by the evidence – and did not discuss whether an "occasional" interactions limitation is sufficient to address evidence that a "brief" interactions limitation is needed. [Filing No. 20 at 4-5.] He asserts that the Commissioner "provided no argument that: precluding team-based activities equated to a limitation to brief interactions with coworkers; why in any manner that would address a limitation to brief interactions with supervisors; or that the ALJ provided any such reasoning." [Filing No. 20 at 7.] William B. reiterates his argument that the ALJ did not explain why he omitted the "brief" interactions limitation. [Filing No. 20 at 7-8.]

State agency psychiatrists Drs. Hill and Larsen both found that William B. was capable of brief interactions with co-workers and work situations. [*See* Filing No. 9-3 at 9 (Dr. Hill stating that William B. is able to "respond appropriately to brief supervision and interactions with coworkers and work situations"); Filing No. 9-3 at 30 (Dr. Larsen making the same finding).] The ALJ credited Drs. Hill and Larsen's opinions in connection with his RFC findings, stating:

> The state agency opinions…are persuasive as to the claimant's psychological impairments. Consultants, Dr. Hill and Dr. Larsen, determined the claimant could perform simple instructions, with brief interactions with coworkers. This is generally consistent with the overall record.

[Filing No. 9-2 at 19.] But the ALJ limited William B. to "occasional interactions with coworkers and supervisors, but no interaction with the public." [Filing No. 9-2 at 16.]

7

The Commissioner relies on *Reynolds v. Kijakazi*, 25 F.4th 470 (7th Cir. 2022), to justify the ALJ's limitation to "occasional" interactions rather than "brief" interactions. There, the ALJ limited the claimant to "occasional interaction with co-workers and supervisors and no interaction with the general public" after noting that a psychiatrist had found that the claimant "could respond appropriately to brief supervision and interactions [with] co-workers in work settings." *Id.* at 472-73 (quotation omitted). The claimant argued that the ALJ should have limited her to "superficial" interactions, rather than "occasional" interactions, and the Seventh Circuit found that the "occasional" interactions limitation was appropriate because the psychiatrist had not "recommended that [the claimant's] RFC be limited to 'superficial' interactions with supervisors and coworkers." *Id.* at 474. The claimant in *Reynolds* did not argue that the ALJ should have included a "brief" interactions limitation, as William B. argues here. Because the claimant argued that a "superficial" interactions limitation should have been included in the RFC and no such limitation was found in the medical evidence, her challenge to the ALJ's RFC was unsuccessful. *Reynolds* simply does not stand for the proposition that an "occasional" interactions limitation is the same as a "brief" interactions limitation.

Here, William B. argues that the ALJ should have included a "brief" interactions limitation in his RFC instead of an "occasional" interactions limitation based on the opinions of Drs. Hill and Larsen. The Court finds that an "occasional" interactions limitation is not the same as a "brief" interactions limitation. *See Trisha G. v. Dudek*, 2025 WL 744120, at *3 (N.D. Ill. Mar. 7, 2025) (reversing ALJ's decision where it included an "occasional" interactions limitation in claimant's RFC despite state agency consultant's finding that she should be limited to "brief and superficial contact with co-workers and supervisors," and noting that while the Seventh Circuit held in *Reynolds* that the distinction between occasional and superficial "may not matter for the purposes

8

of the RFC analysis," the ALJ still needed to explain how the RFC was reached and had not done so); *Kimberly C. v. O'Malley*, 2025 WL 2831050, at *3-4 (N.D. Ill. Jan. 6, 2025) (reversing ALJ's decision where "[d]espite finding that the state agency psychological consultants' opinions were persuasive, the ALJ's RFC determination did not adopt their recommendation that Plaintiff should be limited to only brief and superficial contact with coworkers and supervisors" and instead limited her to occasional interactions and the ALJ did not explain how the RFC was reached). The Court reads the former as referring to the number of interactions during a work shift, while the latter refers to the length of each interaction.

An ALJ need not "use the same restrictions or language as any one medical opinion in their own RFC," but it must explain its conclusion. *Trisha G.*, 2025 WL 744120, at *3. Because the "occasional" interactions and "brief" interactions limitations are different, the ALJ was obligated to explain why he chose the former despite Drs. Hill and Larsen recommending the latter – recommendations which the ALJ found were "persuasive" and "generally consistent with the overall record." [Filing No. 9-2 at 19.] He did not do so here, and his decision must be reversed. *Id.* ("Without a logical bridge between the evidence and the ALJ's conclusion, we lack a sufficient basis upon which to uphold the ALJ's determination.").

### B.  Remaining Issues

Because the Court has already concluded that remand is required for the ALJ to reconsider and adequately explain the "occasional" interactions limitation in the RFC, the Court summarily addresses the remaining issues raised by William B.

First, William B. argues that the ALJ did not explain why it was not including a limitation to repetitive tasks in the RFC, since Drs. Hill and Larsen found that such a limitation was appropriate. [Filing No. 17 at 9-10.] Specifically, Drs. Hill and Larsen found that William B. was

9

"able to make judgments commensurate with functions of simple, repetitive tasks." [Filing No. 9-3 at 9; Filing No. 9-3 at 30.] The ALJ limited William B. to making "simple work-related decisions," but did not discuss Drs. Hill and Larsen's opinions or otherwise explain why he was not limiting William B. to repetitive tasks. [*See* Filing No. 9-2 at 11-21.] The Commissioner argues that the three jobs the Vocational Expert identified based on the ALJ's hypothetical questions all required performing "repetitive or short-cycle work," [Filing No. 19 at 8], but this does not change the fact that the ALJ did not acknowledge the repetitive tasks evidence and explain why he was not including it in the RFC. On remand, the ALJ should ensure that he has considered that evidence and that he has explained how that consideration squares with the RFC.

Second, William B. argues that the ALJ did not properly account for his limitations in concentration, persistence, and pace by limiting him to simple work with no "specific production rate such as assembly line work or work that requires hourly quotas, but end of day quotas are acceptable." [Filing No. 17 at 10-11 (quotation and citation omitted).] While a limitation to slower paced quotas may accommodate limitations in concentration, persistence, and pace, *see, e.g.*, Hess, 92 F.4th at 678, that may not be the case if medical evidence supports the need for further limitations. Mr. Bivens has pointed to medical evidence that he argues the ALJ did not account for in his RFC, [*see* Filing No. 17 at 11-13], and the ALJ should consider on remand whether he has adequately explained why the limitation to simple work and end-of-day quotas accounts for that evidence.

Finally, William B. argues that the ALJ failed to conduct a legally sufficient symptom assessment, and instead simply stated that his "statements about the intensity, persistence, and limiting effects of his…symptoms [were] inconsistent because the record does not support the alleged loss of functioning." [Filing No. 17 at 13-15 (quotation omitted).] He asserts that the ALJ

was required to "evaluate the nonmedical regulatory factors and provide specific reasons for discounting [his] symptoms." [Filing No. 17 at 15.] "An ALJ need not discuss every detail in the record," *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025) (quotation and citation omitted), but it must "give[ ] specific reasons supported by the record" for adopting or dismissing a claimant's statements regarding his symptoms, *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022). The ALJ provided a fairly lengthy discussion of why he believed William B.'s statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record, [Filing No. 9-2 at 17-19], but should ensure on remand that his discussion adequately accounts for not crediting William B.'s statements about his symptoms.

In short, as to the additional issues raised by William B., the ALJ should take care on remand to fulfill his obligation to "adequately reconcile" the evidence with his ultimate conclusion. *Mandrell v. Kijakazi*, 25 F.4th 514, 519 (7th Cir. 2022).

### IV.
### CONCLUSION

For the foregoing reasons, the Court **REVERSES** the ALJ's decision denying William B. benefits and **REMANDS** this matter pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this decision. Final judgment shall issue accordingly.

Date: 11/12/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**